**Joseph HICKS, Pro Se, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 90–762C.**

United States Claims Court.

July 31, 1991.

Joseph Hicks, pro se.

Reginald T. Blades, Jr., Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director, and James M. Kinsella, Asst. Director, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion to dismiss. Plaintiff, a *pro se* litigant, alleges that the United States Department of Agriculture caused him to suffer damage to his "financial position, credit, and reputation" by failing to approve his Farmers Home Administration (FmHA) loan application. Plaintiff also seeks damages for defendant's alleged breach of a commodity loan agreement. Defendant counters that this court lacks subject matter jurisdiction over the complaint because plaintiff's claims sound in tort.

## Factual Background

Plaintiff, a soybean farmer in Kansas, executed a 9-month farm storage note agreement with the Commodity Credit Corporation (CCC) on November 26, 1985. Hicks secured the $31,130.24 loan with 6,128 bushels of soybeans. Plaintiff alleges that the parties supplemented the terms of the commodity loan in an oral agreement. The alleged modification permitted plaintiff to forfeit his collateral in exchange for release of the loan note with no interest due.

Plaintiff asserts that defendant violated the terms of the CCC farm storage note by preventing him from exchanging the collateral in full payment of the note after the maturity date of the loan. As a result, plaintiff sold his produce at the current market rate, which was apparently less than the note amount. According to plaintiff, defendant demanded payment of the principal and interest due on the note.[1] Plaintiff further contends that defendant has refused to release the security agreement covering the collateral soybeans despite his payment of the note in full. Hicks, therefore, claims that defendant acted in contravention of both the Commodity Credit Corporation Charter Act, 15 U.S.C. § 714 (1985) and the terms of the CCC farm storage note.

Plaintiff entered into several other loan agreements with the Department of Agriculture, including a farm storage commodity loan in 1985 and a FmHA loan in 1986. On January 27, 1987, plaintiff applied for another FmHA loan. Plaintiff maintains that the FmHA county supervisor completed the application forms for his FmHA loan. These forms included a Farm and Home Plan (FHP), a security agreement, and a "Highly Erodible Land and Wetland Conservation Certification." However, on February 5, 1987, FmHA told plaintiff that his loan request could not be processed because his application was incomplete. Plaintiff claims that he visited the county office on February 6, 1987, and was informed that "all was well" with his FmHA application.

Plaintiff avers that the FmHA county supervisor orally approved his loan application, and instructed him to obtain all land rental agreements and farm supplies needed to implement his farm plan.[2] Acting in reliance of the purported loan approval, plaintiff allegedly incurred $21,000.00 in expenses for farm supplies and remained obligated to pay $45,000.00 in rent under various land rental agreements.[3] On March 21, 1987, plaintiff presented the land rental agreements and farm orders to defendant. He was informed that the FmHA had no record of his loan application.

Plaintiff brought suit in U.S. District Court for the Western District of Kentucky. In his complaint, plaintiff asserts that defendant unlawfully failed to approve an FmHA loan application and destroyed or altered documents necessary for loan approval. Plaintiff further maintains that the FmHA county supervisor's prior assurances of loan approval constituted misrepresentation, fraud, false pretenses, and an abuse of authority. Plaintiff also avers that the Department of Agriculture made an unauthorized reproduction of his signature on an FmHA document and sent the document to a third party in violation of the Privacy Act, 5 U.S.C. § 552. He claims that the FmHA document contained false and misleading information that damaged his credit worthiness and thereby violated the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691–1691f.

1. Apparently this amount ($49,430.34) represents the loan principal ($31,130.24), the interest due on the loan for the 9-month period ($1,851.82), the interest amount due on the unpaid principal through the final payment date ($9,934.38), and liquidated damages ($6,513.90).

2. Plaintiff's proposed farm plan lists over 1,220 acres of land to be rented and cultivated.

3. The farm supply invoice is dated March 31, 1987, nearly 2 months after plaintiff received the FmHA letter informing him that his application was incomplete. The various rental agreements between plaintiff and other landowners are dated January 21, 1987, January 25, 1987, and March 10, 1987. It is not clear why plaintiff entered into the January rental agreements since the alleged oral loan approval had not yet occurred.

The district court, for want of subject matter jurisdiction, transferred the action to the Claims Court on September 10, 1990. On January 4, 1991, defendant filed a motion to dismiss, contending that the court lacks jurisdiction over the complaint because plaintiff's claims sound in tort. Plaintiff moved for summary judgment on January 8, 1991. On January 24, 1991, plaintiff filed an opposition to the motion to dismiss, asserting that the government had argued previously, and the district court had concluded, that his action must be brought in the Claims Court. On May 28, 1991, the court discussed the jurisdictional issue raised by defendant during a status conference with the parties.

## Discussion

The FmHA is authorized to make various types of low-interest loans, including farm ownership loans, operating loans, and economic emergency loans, to farmers who are otherwise unable to obtain credit from commercial sources. *Hamilton Bank v. United States*, 6 Cl.Ct. 267, 270 (1984). The FmHA Operating Loan program "provide[s] the credit and management assistance necessary for farmers ... to conduct successful operations." 7 C.F.R. § 1941.2 (1987). Eligibility requirements for an operating loan are set forth in 7 C.F.R. § 1941.12 (1987), and include the inability to obtain sufficient credit elsewhere to finance actual needs at reasonable rates and terms.

To apply for FmHA assistance, all applicants not indebted to FmHA must complete FmHA form 410–1, "Application for FmHA Services." 7 C.F.R. § 1910.3(b) (1987). Applicants are also required to complete a FHP. The FHP recites the applicant's farming record, the proposed use of the loan proceeds, and a statement of current financial condition. 7 C.F.R. § 1801.3 (1987). If the submitted application is incomplete, the FmHA notifies the prospective borrower that the application cannot be processed until the required information is received in the FmHA County Office. The FmHA must advise an applicant of missing information within 20 working days of receipt of the application. 7 C.F.R. § 1910.4(a) (1987).

Upon receipt of a properly completed loan application, the FmHA must determine whether the borrower's FHP has a reasonable chance of success. 7 C.F.R. § 1941.12(a)(3) (1987). The FmHA county supervisor must submit the application to the county committee, comprised of three local farmers, for review and recommendation. 7 C.F.R. §§ 1910.5, 1941.12 (1987). If the county committee acts favorably on the application, it so certifies and returns the application to the county supervisor for final approval or disapproval. *Hamilton Bank*, 6 Cl.Ct. at 270. If the county supervisor chooses to approve the loan, he will execute a loan approval form. This document bears the borrower's signature and contains the county supervisor's certification that the county committee has declared the farmer to be eligible for the loan. The document also recites the FmHA's agreement to advance the loan, subject to the availability of funds and on the condition that the farmer continues to comply with the FHP and all pertinent regulations. *Dahl v. United States*, 695 F.2d 1373, 1378 (Fed.Cir.1982). After approving the loan, the county supervisor sends the loan application to the FmHA state office which disburses the loan proceeds to the borrower. 7 C.F.R. § 1941.33(3) (1987).

The FmHA enters into a security (chattels and crops) agreement with the borrower, which gives the government an immediate security interest in the borrower's crops, farm equipment, and livestock. The agreement secures the payment of the note, and ensures that the loan objectives are accomplished. 7 C.F.R. § 1962.2 (1987).

The CCC, through the Agricultural Stabilization and Conservation Service (ASCS) of the Department of Agriculture, administers price support and production adjustment programs. *Raines v. United States*, 12 Cl.Ct. 530, 532 n. 1 (1987). The CCC makes loans to farmers for commodities in storage and farm storage facilities, as well as for the purchase and construction of farm equipment.

The CCC administers two basic loans: regular loans and reserve loans. Regular loans are 9–month loans made at the national loan rate. These loans may be repaid by the farmer prior to the final maturity date by paying the outstanding principal, plus any accrued interest. *Preston v. United States*, 696 F.2d 528 (7th Cir.1982). Thus, the borrower may dispose of his commodity during the loan period. Reserve loans, however, are made for much longer periods (generally 3 years) and are designed to keep the commodity off the market until prices rise to a level that will enable the farmer to receive a fair return for his product. Under the reserve program, farmers are generally not free to dispose of their commodities during the loan period.

To initiate program participation, a commodity producer requests a price support loan at the local ASCS office. 7 C.F.R. § 1421.6 (1985). Under the program, the CCC loans a farmer money at a predetermined per bushel rate of the farmer's produce. *In re Earley & Earley*, 65 B.R. 658 (Bankr.C.D.Ill.1986). Following approval, ASCS disburses the loan against a percentage of the stored commodity crop. 7 C.F.R. § 1421.17 (1985). The commodity securing the loan under the program is withheld from sale on the open market, which causes the supply to diminish and the price to stabilize or increase. Should the market price go above the loan amount, the producer can sell the stored crop, repay the loan, and retain the excess. If the price remains below the loan rate, the borrower may deliver the produce to the CCC in satisfaction of the loan and thereby realize a profit that is otherwise unobtainable in an open market sale. *Swartz v. United States*, 14 Cl.Ct. 570, 573 (1988).

The producer must seek written approval of the county ASCS to remove the commodity from storage for sale. 7 C.F.R. § 1421.18 (1985). Authorization by the CCC to sell some or all of the stored commodity does not release the security interest in the commodity or "release the producer from liability for any amounts due on the loan indebtedness if full payment of such amounts is not received ..." *Swartz*, 14 Cl.Ct. at 573. If unauthorized disposition of the commodity occurs, the government may assess liquidated damages against the producer from the date of disposition until repayment of the loan. 7 C.F.R. § 1421.17(h) (1985).

In addition, a producer desiring to deliver the commodity to the CCC must give the county ASCS office written notice on or before the maturity date. 7 C.F.R. § 1421.19 (1985). Delivery must be either the identical commodity set forth in the security agreement or a similar commodity. 7 C.F.R. § 1421.19(a) (1985). The CCC will not bear a loss in quality or quantity of the farm-stored commodity after disbursal, except under certain conditions.[4] Further, the CCC will not release the producer from the obligation incurred under the promissory note or release the security agreement covering the commodity until the loan is repaid. 7 C.F.R. § 1421.18(b) (1985). In other words, the producer must either pay off the loan or deliver enough of the commodity to cover the balance of the loan.

If the loan indebtedness is not satisfied upon maturity of the loan, the CCC may take title to the unredeemed collateral. The CCC has no obligation to the producer if the value of the collateral exceeds the loan indebtedness. However, if the commodity is sold for less than the value of the note, the producer must pay the CCC the amount of the deficiency plus interest. 7 C.F.R. § 1421.23 (1985).

**I.**

 Under the Tucker Act, this court has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or

---

4. Under these conditions, the producer must immediately report the loss; the loss must not be due to the negligence of the producer; and the producer must not have made any false or fraudulent statements in his loan application. *Swartz v. United States*, 14 Cl.Ct. 570, 573 (1988).

for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The district court, under the belief that subject matter jurisdiction was lacking, transferred the case to the Claims Court pursuant to 28 U.S.C. § 1631. "It is the practice of the courts generally to refuse to reopen what has been decided.... This principle provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case...." *American Lifestyle Homes, Inc. v. United States,* 17 Cl.Ct. 711, 715 (1989), citing *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 812, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). The "law-of-the-case-doctrine" would normally require this court to refrain from deciding the issue of jurisdiction contrary to the finding of the district court. However, this court is obligated to determine its own jurisdiction. *Hambsch v. United States,* 857 F.2d 763 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1054, 109 S.Ct. 1969, 104 L.Ed.2d 437 (1989); *Diamond v. United States,* 228 Ct. Cl. 493, 657 F.2d 1194 (1981).

## II.

■ The CCC farm storage note is an agreement between plaintiff and the Department of Agriculture. Plaintiff's CCC claim is, therefore, predicated upon an express contract with the United States. Plaintiff alleges that the government breached the loan contract by refusing to exchange the collateral for the note. Thus, the court has Tucker Act jurisdiction over plaintiff's breach of contract claim.[5]

Alternatively, case law supports the existence of an implied-in-fact contract created through the payment of the money demanded. *Kirkendall v. U.S.,* 90 Ct.Cl. 606, 31 F.Supp. 766 (1940) (implied-in-fact contract between the government and an individual whose money the government

has erroneously received is within the court's jurisdiction); *Eastport S.S. Corp. v. United States,* 157 Ct.Cl. 802 (1962). As such, this court has asserted jurisdiction over claims for monies wrongfully demanded by and paid to the CCC under the farm-storage loan program. *Swartz,* 14 Cl.Ct. at 573; *see also Hubbs v. United States,* 20 Cl.Ct. 423 (1990), *aff'd without op.,* 925 F.2d 1480 (Fed.Cir.1991). Therefore, plaintiff's claim for the recovery of interest he alleges was wrongfully paid on the CCC farm storage note is within this court's jurisdiction.

## III.

Plaintiff asserts that defendant destroyed or illegally removed FmHA loan documents. Plaintiff alleges government fraud, misrepresentation, and false pretenses, and claims that his FmHA loan application was not approved because of the fraudulent and illegal actions of defendant. Plaintiff seeks equitable relief and "liquidated damages" for lost crop revenues.

■ This court's jurisdiction does not extend to actions which sound in tort. 28 U.S.C. § 1491(a)(1). A claim predicated on intentional and wrongful regulatory action in the consideration, approval, or servicing of an FmHA loan or application is beyond the jurisdiction of the Claims Court. In *Somali Dev. Bank v. United States,* 205 Ct.Cl. 741, 508 F.2d 817, 821 (1974), the Court of Claims held it lacked jurisdiction over claims against the United States for negligent misrepresentation, wrongful inducement, or careless performance of a government duty. Similarly, in *Smithson v. United States,* 847 F.2d 791, 795 (Fed. Cir.1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989), the Federal Circuit held that undue delay by the FmHA in making a loan is vindicable only in a tort action.[6] In accordance with *So-*

---

5. The regulations applicable to the CCC farm storage note clearly state that the producer should, on or before the maturity date, give the county office written notice of his intention to deliver the collateral in satisfaction of the loan. 7 C.F.R. § 1421.19 (1985). However, the court finds that this issue requires further ventilation

before a decision on the merits of the claim can be reached.

6. Although the county supervisor has the final authority to approve or disapprove the FmHA loan, the county committee must first certify the application. If the county supervisor had orally

*mali* and *Smithson,* the court lacks jurisdiction over claims for damages based on fraud, misrepresentation, false pretenses, and abuse of authority. Such claims sound in tort and are redressable, if at all, in district court.

■■■ Plaintiff also maintains that defendant violated the Privacy Act and the Equal Credit Opportunity Act, and requests injunctive relief to prevent further harm to plaintiff. The court has held previously that all claims arising under the Privacy Act must be brought in federal district court. *Rogers v. United States,* 15 Cl.Ct. 692, 698 (1988). As such, the Claims Court lacks jurisdiction over plaintiff's Privacy Act claims. Further, § 1691e(f) of the ECOA permits loan applicants who have been treated in a discriminatory manner to bring an action in United States district court. Consequently, the district court, not this court, is the proper forum for plaintiff's ECOA claim. *See Gross v. United States Small Business Administration,* 669 F.Supp. 50 (N.D.N.Y.1987), *aff'd without op.,* 867 F.2d 1423 (2d Cir.1988). Last, this court cannot grant the injunctive relief sought by plaintiff. *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969).

### IV.

■■■ Although this court lacks jurisdiction over plaintiff's claims for liquidated damages, non-money mandating statutory violations, and injunctive relief, the court can transfer the case to a court of competent jurisdiction if the transfer "is in the interest of justice." 28 U.S.C. § 1631; *Rodriguez v. United States,* 862 F.2d 1558 (Fed.Cir.1988). It clearly "is in the interest of justice" to retransfer these claims to the district court, a court of competent jurisdiction, so plaintiff can pursue his action against defendant. *Clark v. United States,* 229 Ct.Cl. 570, 577 (1981). Revisiting the district court's determination of

jurisdiction is not inharmonious with the Federal Circuit's holding in *Doko Farms v. United States,* 861 F.2d 255 (Fed.Cir.1988). In addition, the court may entertain plaintiff's CCC claim while his remaining claims are heard by the district court. The CCC claim is founded upon an agreement completely independent of his other claims. The CCC interest claim is, therefore, based on different operative facts than the other counts in the complaint. Consequently, § 1500 of Title 28 is inapplicable in the present case. *See, e.g., Johns–Mansville Corp. v. United States,* 855 F.2d 1556, 1562 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989).

### Conclusion

For the foregoing reasons, defendant's motion to dismiss is denied. The Clerk is instructed to retransfer counts 1, 2, 3, 4, 6, 7, 8, and 9 of the complaint, as enumerated in the prayer for relief, to the U.S. District Court for the Western District of Kentucky. Defendant shall file an answer to the "CCC interest" claim (count 5) by September 4, 1991.[7] No costs.

approved Hicks loan before the required steps had been completed, his approval would have been unauthorized. The government is not estopped to deny the acts of its agents who have acted beyond the scope of their authority. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). In dealing with the county supervisor, plaintiff was, therefore, obli-

gated to ascertain the scope of the county supervisor's authority.

7. Plaintiff's motion for summary judgment is denied without prejudice. Plaintiff may refile his motion with respect to the CCC interest claim after defendant answers the complaint. Said motion must be in accordance with RUSCC 56.