**KIRKENDALL v. UNITED STATES.**
No. 43504.

Court of Claims.
March 4, 1940.

Thomas V. Sullivan, of Chicago, Ill. (Frank E. McAllister, of Chicago, Ill., on the brief), for plaintiff.

J. H. Sheppard, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, Sp. Assts. to Atty. Gen., on the brief), for defendant.

Before WHALEY, Chief Justice, WHITAKER, WILLIAMS, LITTLETON, and GREEN, Judges.

**WHALEY, Chief Justice.**

The plaintiff brings this action individually and as administratrix of the estate of James F. Kirkendall. The action is based on an implied contract for the recovery of money appropriated by the defendant under legal forms and applied to the unpaid taxes of another person.

For many years there was solicited through the mails, and otherwise, subscriptions for the prosecution of a claim to collect a large estate supposed to be in England and known as the "Sir Francis Drake Estate." Promise was held out to those who contributed to receive a return in a thousand fold for each dollar subscribed. The prime mover in this venture was one Oscar M. Hartzell. Thousands of credulous people believing in the existence of this estate and desirous of acquiring wealth in this manner, sent contributions in money, checks, and postoffice orders to Oscar M. Hartzell at the Croydon Hotel in Chicago, Illinois.

Plaintiff and her husband honestly believed in the existence of this estate and contributed between sixteen and seventeen hundred dollars between them some ten years before his demise.

Plaintiff's husband, James F. Kirkendall, had been a travelling clothing salesman for many years. For two years before his death he had not been employed as a travelling salesman but had been engaged by Hartzell at a weekly stipend of between thirty and forty dollars for handling the funds which came to Hartzell. The checks and money orders were turned over to Kirkendall and he deposited them in his checking account in the bank. When they were collected he would draw the amount out of his checking account and place the money in an envelope in his safe deposit box at the bank. When these collections amounted to a substantial sum he would remit the amount to London or New York. The money received by Kirkendall for this fund was never commingled with his own funds in the safe deposit box.

On April 8, 1935, police officers of the City of Chicago raided the Croydon Hotel and arrested James F. Kirkendall and others in connection with this venture. Prior to Kirkendall's arrest, Oscar M. Hartzell had been arrested, tried, and convicted for the fraudulent use of the mail in connection with the Drake Estate and was serving a sentence in the penitentiary.

On the morning of his arrest, Kirkendall had remitted to New York $4,000, being all the collections of the Drake Estate in his safe deposit box.

After Kirkendall's arrest by the police officers he informed them of his safe deposit box and was taken by the officers to the bank where the contents of the box, consisting of $13,800 in currency and 324½ English pounds, were confiscated and taken to the Detective Bureau. Following the appropriation of his money by the police, Kirkendall was subjected to an exhausting and almost inhuman examination by the police authorities. This continued from about 5 o'clock in the afternoon until the Assistant State's Attorney and the Postal Inspector were brought in and Kirkendall's statement was taken down at 1:57 the next morning.

At the time of his arrest Kirkendall was 66 years of age and in very frail physical condition. He was suffering from diabetes, chronic myocarditis, uraemia and prostate condition. He was transferred by the police to the jail hospital after nine hours of gruelling questioning. Kirkendall was in

the jail hospital until 5 o'clock in the afternoon of April 19, 1935, at which time he was released on bond.

Later the money obtained from Kirkendall by the police was turned over to the postal inspector under a subpoena to be used as evidence in the trial of the promoters of the Drake Estate. Following the acquisition of this money by the postal inspector, the collector of internal revenue prepared and filed a return for taxes for Oscar M. Hartzell for the year 1934, which return disclosed a large tax due the Government. The collector then levied the tax and under a warrant of distraint on the postoffice inspector obtained from him $13,800 and 324½ English pounds, which had been taken by the police authorities from the safe deposit box of Kirkendall, and applied this amount as a credit to the outstanding assessment against Hartzell for the year 1934.

■ A mere recital of the facts shows that the money taken from the postal inspector and applied to the taxes of Hartzell was not the taxpayer's personal property. The defendant knew at the time, or had reason to know, that Hartzell was serving a sentence for the fraudulent use of the mail in the collection of money for the Drake Estate. This fund either belonged to Kirkendall or to those from whom it had been collected. The action of the Government, in the conviction of Hartzell and the arresting of these other parties on a charge of conspiracy for the fraudulent use of the mail, stamps the fund as not belonging to Hartzell and it could not under any conceivable means be applied to the taxes due by him.

Plaintiff brings this action alleging that the money so taken belonged to her husband and herself and was wrongfully confiscated and applied to taxes due by another.

The only direct evidence in the case as to the ownership of this money is the testimony of the plaintiff. She testified that part of it was derived by her from her mother's estate and the balance was obtained by her husband through loans on life-insurance policies and cash-surrender values of life-insurance policies. Plaintiff's statement is corroborated by the evidence obtained from the life insurance companies which shows that over a number of years plaintiff's husband took out policies and subsequently borrowed on them, and, in other instances, after carrying policies for years, obtained their surrender values.

The only evidence contradictory to plaintiff's testimony is the so-called admission made by Kirkendall after his arrest and after he had been subjected for hours to the reprehensible methods and tactics of the police officers after turning over the contents of his safe deposit box.

Subjecting this sick, old man to hours of police questioning and wringing from him an admission stamps the so-called admission with every earmark which a court of law will not accept as the truth. After hours of questioning Kirkendall was placed in the jail hospital and remained in the hospital until he was released under bond on the afternoon of April 19, 1935. The evidence shows that he died three and one-half hours after his release. See Brown et al. v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682, and Chambers et al. v. Florida, 60 S.Ct. 472, 84 L.Ed. ——, decided by the Supreme Court February 12, 1940.

The defendant has in its possession money to which it is not entitled and which has been wrongfully obtained from the plaintiff and her husband.

■ The defendant contends that this money, having been applied to taxes due by Hartzell under the Revenue Law and no timely refund claim having been made by the plaintiff, or her husband, cannot now be recovered. It is only necessary to say that a refund claim is an appropriate action under the revenue statutes to recover money paid as taxes when made by the party who paid the tax. There is no claim that either Kirkendall or the plaintiff paid, or had assessed against them, any taxes, and certainly a refund claim would not have been an appropriate action for them to take.

■ When the Government has illegally received money which is the property of an innocent citizen and when this money has gone into the Treasury of the United States, there arises an implied contract on the part of the Government to make restitution to the rightful owner under the Tucker Act, 24 Stat. 505, and this court has jurisdiction to entertain the suit.

■ As was said by the Supreme Court in the case of United States v. State Bank, 96 U.S. 30, 35, 36, 24 L.Ed. 647:

"\* \* \* An action will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund. The form of the indebtedness or the mode in which it was incurred is immaterial.

\* \* \* \* \* \* .

"But surely it ought to require neither argument nor authority to support the proposition, that, where the money or property of an innocent person has gone into the coffers of the nation by means of a fraud to which its agent was a party, such money or property cannot be held by the United States against the claim of the wronged and injured party."

See also Dooley v. United States, 182 U.S. 222, 21 S.Ct. 762, 45 L.Ed. 1074; Basso v. United States, 239 U.S. 602, 36 S.Ct. 226, 60 L.Ed. 462; and Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L. Ed. 1421.

The Government has taken the money of the plaintiff and her husband and it is only common honesty that it should be returned. The United States is required to be honest with its citizens just as much as its citizens are required to exercise common honesty with their Government.

Plaintiff is entitled to recover $13,800, as administratrix, and 324½ English pounds, individually. The English pounds were converted into American currency by the Internal Revenue Bureau at the rate of exchange at that time, in the amount of $1,590.05.

Judgment will be entered in favor of the plaintiff individually in the amount of $1,590.05, and as administratrix of the Estate of James F. Kirkendall in the sum of $13,800.

It is so ordered.