## J. C. PITMAN & SONS, INC.
### v.
### The UNITED STATES.
### No. 302-59.

United States Court of Claims.
May 10, 1963.

Charles H. Burton, Washington, D. C., for plaintiff; Stanley M. Brown and G. Marshall Abbey, Manchester, N. H., on the brief.

Mitchell Samuelson, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant; Edward S. Smith, Lyle M. Turner and Earl L. Huntington, Washington, D. C., on the brief.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

JONES, Chief Judge.

This is a suit for the recovery of taxes in the amount of $14,632.04 [1] paid by plaintiff, J. C. Pitman & Sons, Inc., on behalf of another corporation.

Plaintiff is a New Hampshire corporation engaged in the manufacture and sale of restaurant equipment. It is the successor company to a Massachusetts corporation of the same name. In 1945, John C. Pitman, plaintiff's majority stockholder, acquired the exclusive right to purchase all products manufactured by plaintiff for a specified period. He subsequently formed the J. C. Pitman & Sons Sales Corporation and trans-

---

[1]. Plaintiff's original petition demanded judgment in the amount of $14,526.22 but this amount was increased by amendment on July 12, 1961. Subsequently how- ever, plaintiff conceded to an adjustment of $4,050 and reduced its demand to $10,582.04.

ferred to it the exclusive sales franchise. Although that corporation bore almost the same name as plaintiff, it was not in a parent-subsidiary relationship with that corporation. However, the stockholders, officers, and directors of the two corporations were the same, among whom was C. Carroll Cunningham, general counsel and trustee of voting trusts of all the stock in both companies.

Among Cunningham's diverse powers and responsibilities was the duty to attend to tax matters affecting either or both of the companies. It was for that reason that he undertook the responsibility for attending to a tax deficiency notice mailed to the sales corporation from the Commissioner of Internal Revenue on June 25, 1951, relating to taxes assessed against that company for the years 1945, 1946, and 1947. Certain deficiencies had also been assessed against the plaintiff corporation for roughly the same period.

For reasons best known to Mr. Cunningham, but apparently to protect his own interests, he informed the directors of plaintiff company that to the extent that the sales corporation did not have sufficient funds to defray its tax deficiencies, it would be necessary for plaintiff to pay them. He further informed the directors that this arrangement was binding upon them as a result of an agreement which he had reached with the Internal Revenue Service relating to the tax liabilities of both corporations. There is no substantial evidence, however, that any such understanding had in fact been reached.

Since the sales corporation had ceased to do business in 1950 (but with formal liquidation postponed pending the set-tlement of tax questions), it did not have the funds available with which to discharge these obligations. Thus plaintiff, responding to Mr. Cunningham's representation, paid the amounts which it now seeks to recover, and advised the Internal Revenue Service that such payments were for the benefit of the sales corporation.

Plaintiff contends that it discharged the tax liabilities of the sales corporation under the mistake of fact that an agreement had been made with the Internal Revenue Service that legally obligated plaintiff to make payment. This mistake, plaintiff says, was induced by the fraud of its attorneys. Plaintiff avers that the disputed sums were accepted by agents of the Government with knowledge of the circumstances under which they were paid. In making these allegations plaintiff is founding its case on the provisions of Title 28 United States Code, giving this court jurisdiction to render judgment on any claim arising from an "implied contract with the United States." [2]

Defendant, on the other hand, argues that the petition alleges a contract implied in law, over which this court has no jurisdiction; but should it appear that the court does have jurisdiction in the instant case, then plaintiff's petition must be denied because any payment made by plaintiff was voluntary in so far as the United States is concerned.

The defendant also takes the position that this action is barred because it is essentially one for the refund of taxes within the meaning of section 7422(a) of the Internal Revenue Code of 1954 and because the petition was not filed in a timely fashion.[3]

---

**2.** 28 U.S.C. § 1491 (1958). Consistent therewith, plaintiff claims the 6-year limitations period provided for by § 2501 of that title.

**3.** "§ 7422. Civil actions for refund

"(a) No suit prior to filing claim for refund.—

"No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established

█ It is manifest that if this case is a suit for a tax refund it is barred by plaintiff's failure to file a timely claim for refund. Plaintiff therefore grounds its entire case on the claim of an implied contract. The plaintiff's brief and a considerable portion of defendant's brief are devoted to this issue. In these circumstances we have no choice but to discuss it, since the other issue is practically conceded.

As we understand defendant's position, it is that if plaintiff is not acting as a volunteer in paying these taxes (and plaintiff claims that it is not) then plaintiff must of necessity be a *taxpayer* who must seek his relief by claiming a refund under section 7422(a). This very question of whether plaintiff was a volunteer lies at the heart of this case regardless of whether the action is given a label of "tax refund" or "contract." Since plaintiff has chosen the ground on which to proceed, we will consider the case in terms of the allegations; thus, the question is whether the petition, fairly construed, sets forth that kind of a contract for which this court will grant relief, and, if so, whether the record before us justifies such relief in this case.

█ At the outset, we are faced with a technical dichotomy between contracts implied in fact and contracts implied in law. It has been said that this court has no jurisdiction to render judgment in the latter.[4] Under the traditional conception, a contract implied in fact is a real contract in the usual sense, although there may have been no actual worded "agreement." It is drawn out by the trier of fact when the circumstances warrant him to conclude (particularly from the conduct of the parties) that there exists the legal equivalent of mutual consent. In other words, a contract implied in fact is *a promise implied* by the law. By way of contrast, a contract implied in law is *an obligation imposed* by the law. As stated by Lord Mansfield:

> "If the defendant be under an obligation, from the ties of natural justice, to refund; the law implies a debt, and gives this action founded in the equity of the plaintiff's case, as it were upon a contract." [Moses v. Macferlan, 2 Burr. 1005, 97 Eng. Rep. 676 (K.B. 1760).]

The "ties of natural justice" of which he spoke do not, however, impose an obligation for the protection of a mere volunteer.[5] As Lord Mansfield saw it, a contract implied in law is neither contract nor tort, but a third category entirely different in nature.

---

in pursuance thereof." [26 U.S.C. § 7422 (a) (1958)]

With regard to filing, section 3772(a) (2) of the 1939 Code governs the time in which proceedings under section 7422 must be brought.

4. In Merritt v. United States, 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925), the Supreme Court said:

"The Tucker Act does not give a right of action against the United States in those cases where, if the transaction were between private parties, recovery could be had upon a contract implied in law."

For similar comments, see, e. g., United States v. Algoma Lumber Co., 305 U.S. 415, 59 S.Ct. 267, 83 L.Ed. 260 (1939); United States v. Minnesota Mutual Investment Co., 271 U.S. 212, 46 S.Ct. 501, 70 L.Ed. 911 (1926); Sutton v. United States, 256 U.S. 575, 41 S.Ct. 563, 65 L.Ed. 1099 (1921); Tempel v. United States, 248 U.S. 121, 39 S.Ct. 56, 63 L.

Ed. 162 (1918); Langford v. United States, 101 U.S. 341, 25 L.Ed. 1010 (1879). There have been cases, however, where the language is broad enough to imply that the Court of Claims has restitutionary powers. See, e. g., Kirkendall v. United States, 31 F.Supp. 766, 90 Ct. Cl. 606 (1940). But see further reference to that case, infra.

5. See, e. g., Combined Industries, Inc. v. United States, 15 F.Supp. 349, 83 Ct.Cl. 613 (1936). See also United States v. Edmondston, 181 U.S. 500, 515, 21 S.Ct. 718, 724, 45 L.Ed. 971 (1901) where the Court summed up as follows: "It is a case of a voluntary payment, and as such the claimant's remedy is by appeal to the discretion of Congress and not by an action in the Court of Claims." Similar language is found in Stahmann v. Vidal, 305 U.S. 61 (1938), at 64, 59 S.Ct. 41 at 42, 83 L.Ed. 41.

In the instant case it would be quite simple to be enticed, by certain language dredged from the record, into relegating the case into one category of implied contract or the other, depending upon whether the language were suggested by plaintiff or defendant. To do so, however, would be to permit ourselves to jump to the conclusion while being drawn away from the clear facts of the case. Clearing away the verbiage, it is apparent that the success of plaintiff's claim rests on its ability to bring the case within the scope of one of two groups of cases in which this court has granted relief upon an implied contract.

Typical of the first group [6] relied upon by plaintiff is United States v. State Nat. Bank, 96 U.S. 30, 24 L.Ed. 647 (1877). In that case the cashier of a United States Subtreasury in Boston engaged in a fraud upon the plaintiff to conceal the fact that he had embezzled a large amount of Federal money. The Supreme Court held that where the money of an innocent person is received by the United States by means of a fraud to which its agent was a party, such money cannot be held against the claim of the wronged party. The fraud of the agent was the essential element because it was that fraud which constituted such duress upon the money of the plaintiff as to render his payments involuntary. A second type of case in which this court has taken jurisdiction is illustrated by Kirkendall v. United States, 31 F.Supp. 766, 90 Ct.Cl. 606 (1940),[7] where the Government illegally seized the plaintiff's money and applied it to the tax liability of another. In that instance the element of seizure by the Government supplied the necessary amount of property duress to take the case out of the general rule. The court said:

"When the Government has *illegally* received money which is the property of an innocent citizen * * *, there arises an implied contract on the part of the Government to make restitution * * * and this court has jurisdiction to entertain the suit." [Kirkendall v. United States, 31 F.Supp. at 769, 90 Ct.Cl. at 613.] [Emphasis added.]

These typical cases show that in each instance in which relief has been granted there has been present some element which would remove the payee from the fatal category of pure volunteer. The record before us, however, is void of any fact that would supply us with such an element.

Plaintiff insists that the Internal Revenue Service was on notice [8] that plaintiff paid the tax liabilities of the sales corporation under a mistaken conception of its duty. This assertion is made on the strength of Mr. Cunningham's transmittal letters, accompanying the plaintiff's payment checks, which stated that the checks were in payment of the sales corporation's liability. We have examined these letters and checks carefully and find nothing therein that would be sufficient to put defendant on notice that plaintiff was not making a volunteer payment, especially in view of the other facts in evidence. For that reason we cannot possibly equate this case to those upon which plaintiff relies. To do so would place an impossible burden upon the routines of the Internal Revenue Service, for we have the impression that the payment of one's taxes by another is not an unusual occurrence.

---

6. See e. g., Maffia v. United States, 163 F.Supp. 859, 143 Ct.Cl. 198 (1958); Gooch Milling & Elevator Co. v. Commissioner, 133 F.2d 131 (8th Cir. 1943).

7. See also Tucker v. United States, 42 F. Supp. 292, 95 Ct.Cl. 415 (1942); Royal Indemnity Co. v. Board of Education, 137 F.Supp. 890 (M.D.N.C.1956).

8. For the implication of this assertion, plaintiff calls our attention to Restatement, Restitution, § 14(1), comment **c** (1958):

"If the mistake * * * is a material one as to his * * * duty to the transferee * * *, the transferor is entitled to restitution if, but only if, the transferee had notice that the transferor so believed, that such belief was not in accordance with the facts, and that the transfer was made because of it. * * *"

■ To hold the defendant liable for the alleged fraud or misconduct of an attorney of the opposite party in the selection of which it had no part, would necessitate a much stronger factual showing of full notice or knowledge on the part of the Government, or participation on the part of an agent of the Government, or some other special circumstances not evident here.

Admittedly, the plaintiff is upon the horns of a dilemma, but we cannot remove it. Had it sought relief under the tax refund statutes, it would have been barred by its failure to file a claim and by the passage of time. On the other hand, by taking the position that it is not a taxpayer within the meaning of those laws, it, by failing to show notice, does not carry its burden of establishing an implied contract.

The petition is dismissed.